22-1676 Southern Iowa, United States v. Darrius Redd Ms. Messimer, the court appreciates your willingness to accept the CJA appointment. Of course, thank you. May it please the court and counsel, the prosecution's challenge in this case was convincing a jury that AE participated in prostitution not voluntarily, not willingly, but instead only by force, fraud, or coercion. This was a challenge for the prosecution given the facts of the case. Unfortunately, Mr. Redd was prevented from really presenting his defense because the district court excluded the most probative evidence on this point. And that unfairness was then exacerbated when the prosecution punched below the belt both during cross-examination and during rebuttal closing argument. In total, this deprived Mr. Redd of a fair trial, and he deserves to have a new trial. So beginning with the issue of the videos that were excluded, there are two primary videos that I think are the most important. They were videos C and C1 in the pretrial, and then when they were identified at trial, they were A and A1. But these videos, more than any just testimony from a witness, provide a very vivid understanding of what the relationship was between this alleged victim and Mr. Redd. I personally read these transcripts. I did not do the trial, so I read the transcript first afterwards, and it was shocking to me to have read the transcripts and the just written description of what happened and then go back and look at these videos. Because the videos, to me, the thing that stood out to me was just how strange it was that this woman invited Mr. Redd into her sorority home and then was performing every sexual activity under the sun with him under these fluorescent lights in her sorority house basement. It really brought this to life in a way that seeing it on the transcript could not. It showed just really how voluntary and enthusiastic she was. The district court excluded that evidence because the district court said, for a number of reasons that I'll talk about separately, but that fundamentally that it wasn't probative and it was cumulative. It simply is not. The video shows much more than the words do. It shows really what the balance of power was between these two people. It shows how she was on her turf and just was very fearless about her behavior and very reckless. This was their first meeting. This was before he'd done anything to coerce her, and this is the way that she's behaving. She had her own pathology that the jury really needed to understand. I guess that's kind of the question I have. Why does it necessarily matter, especially early on, that there was a consensual relationship? Does that necessarily undermine that that changed and became a coercive relationship? I'm not saying that it could never become coercive or that this means absolutely it stayed consensual. It's for helping the jury understand the relationship. She can testify that it changed, but he can testify that it didn't change. If the jury hasn't seen the way they related initially, when there were things like drugs at play, he is videoing her. Was there testimony that it was consensual at the beginning? There was. I think it's kind of muddled on this point. She does testify she has sex with him, but she says she felt like she couldn't say no and that it was forceful. Well, obviously an element of this is force. I think that a jury could conclude based on her testimony that even this first sex act was by force, fraud, coercion. Yes, I think that this falls within the scope of the whole thing, and it was certainly within the scope of what was charged in the indictment. On that point, and maybe I should be asking the government counsel this, but I got it that it was their position that it was uncontested that it was consensual. I disagree with that based on what... Is that your understanding of their position? That's my understanding of their position, yes, that they're taking now. But no, I don't think that's the way the testimony actually came out. And also, I think that it's problematic to say, oh, everyone agrees it was consensual. So you can't actually see the real evidence showing it was consensual, of them kind of heading that off the path, so you can't get the full flavor of really how consensual it was. And it's not just the consent, it's the That's not the girl that you see at the beginning, and it's not really clear what would change when all this happened very quickly after their first encounter. Help me understand, and maybe I hope I'm not just repeating Judge Grunder's question, but the difference between having a consensual sexual evening overnight, and then an unconsensual participation in prostitution. Help me understand how those would be related, in your defense. How not presenting the evidence of the consensual relationship prevents you from presenting the full defense that the prostitution was not. The videos are not just about the consensual sex. The videos are about the consensual relationship, which that goes to the relationship between a pimp and a prostitute. So it's more about their relationship. And in these videos, it's not just her having sex, it's her talking specifically about their plan to prostitute. And so that's also a hearsay exception of your then-existing mental plan to do something, and her impressions. Also I think extremely important are her statements that she makes in the video about enjoying rough sex. She says, this is the perfect situation for me because I like to be controlled and disrespected. So then when the government's later claiming that he's having rough sex with her, and that is coercive, well, the fact that she enjoys that, that's the contact sports exception. You know, she's involuntarily engaging in something that she likes to do, and then later claiming it was an aspect of force, fraud, coercion. How much did the district court allow a cross-examination as to what was said? You're talking about the conversation that sort of, in your view, I think is establishing a relationship between these two. How much did the district court allow that cross-examination? I think there was a little bit of a miscommunication between counsel and the court. I think counsel limited his cross-examination because he felt that anything that was in the videos was off the table. So I think he did some kind of self-editing, and then during the break after his cross-examination, he brought up this issue again of, okay, can I now get into issues that are in the video? I want to make a proffer, bring her in maybe. And it was at that point where the court said, well, actually, this victim didn't testify that this was non-consensual, so you don't get to get into any of that. So it never was fully developed because it was cut off at that point. And what about the other parts of the conversation about discussing their business plans and that sort of thing? Was that brought out in cross-examination? There was some of that, but the exception would be there was no discussion of rough sex. That was very clear from the court's limine ruling that nothing about rough sex or a BDSM fetish, nothing of that ilk could be brought up during cross-examination, and counsel did adhere to that. And I do think that's perhaps the most important part of the video because that directly undercuts the claims later that he raped her, and that is what coerced her to engage in prostitution. Certainly, that could be true, and the jury could believe that, but the jury could also believe that she had consented to that and that by her actions and words, she told him that this was how she liked to have sex. So that's part of his defense that was not allowed at all to be presented to the jury. And I just think it's so true that if a picture speaks a thousand words, these videos show so much more than that. And when it's the best evidence of what happened, it's within this very tight timeframe between these two people. And these cases are about the power balance because there's a difference between just being a pimp and being a sex trafficker or being just a prostitute versus being a trafficking victim. And these videos go directly to that narrow divide between those two aspects. So the jury should have been able to see that because it's one thing for this person to come in afterwards and be kind of a shrinking violet and talk about how their parents don't love them enough versus seeing how she was really on board with this whole idea from the very beginning by her actions and words, not because he was forcing her to do something. What was the timeframe? You said it was pretty short. Yes. So the timeframe is this first interaction happened March 5th at the... Actually, I'm sorry. It's March 2nd that they first meet in her sorority basement. And then they start prostituting immediately afterwards. He takes her to class the next day, pick her up. She sees a couple of Johns the next day. And then that goes on for the rest of the week. And it's the next weekend when they have the interaction with the police and things kind of end. And then there's a second round a week later when she contacts him again saying she needs to get her things from him. And they go out again and she claims that was coercive as well. But still, it's a two-week time period altogether. Turning then to the improper cross-examination of Mr. Redd. I don't think that there really can be any defense of this being a proper cross-examination strategy. The questions of whether or not he heard someone testify are not relevant. It doesn't matter if his ears worked or not. I think everybody knows they did. So these questions are just being used in a different way. What is the real purpose here? The purpose is to try to draw this direct comparison between what he's saying and what somebody else is saying. They're argumentative. And then the way they played out and how repetitive they were, they forced him to then comment on other people's credibility. And this was improper. And even though the question was did you hear, really in the context of how it happened, it was not expecting a yes or no answer from him. That wasn't the whole point. And then when he did give his substantive testimony, the government would just argue with him about that and say, well, you heard this other person say this. It was a way of really putting him in the crosshairs against these other people and making him say that other people were lying. There was plenty to make him look bad in this trial, but this kind of went beyond what was fair. There was no objection, though, was there? There were some objections, but I think that they kind of missed the mark because this was a strange strategy, that it doesn't really fall exactly into, I think, what counsel was used to seeing. And then the court overruled those. I think there were three objections, and then it just went on unabated after that. But I do think that this is clear error because there's just patently no relevance to any of this, and it is so argumentative. And maybe where it was the worst is where he's saying, but you heard four women say this, right? Four other people said this. I think the question, though, is whether it's plain error, and that would require, I think, a reasonable likelihood of a different outcome. I do think, talking about the sufficiency here, I do think that there is a reasonable probability of a different outcome. You have someone who was very enthusiastic about prostituting here. This comes down to just consent. That's the first issue, but about these questions. Yes, but I think here, you've got someone who testified in his own defense. He's got his own version of events, and he's not allowed to give that in a way that the jury could even substantively hear because he's cross-examined, and it's so focused on just pitting him against these women. Did the prosecutor do the classic, you heard the testimony, who's telling the truth, or the aren't you lying now kind of thing, or was he lying then? Was there that kind of follow-up? I agree. It was not that type of what you'd call classic, but I've come to 85 times where he's asked if he heard something. When he explains what he did hear, there's still more follow-up about what you didn't hear. It happened so many times that Mr. Redd did say someone was not telling the truth. Everybody knew what was going on here. It's kind of like, when did you stop beating your wife question. Did you hear this? Well, he says yes sometimes, so it's like they're trying to get him by saying yes if that's an admission. I think that's where the prejudice comes in, probably particularly, is that these questions set him up to make an admission that's actually not technically, if you take the question verbatim, an admission. I think that kind of binds then with the way the prosecutor treated it in rebuttal-closing argument, where that's, again, a classic community protection argument, where you say enough is enough, no more. These are just so blatantly inappropriate strategies, and it went on throughout his entire cross-examination. It wasn't a short thing, it was pervasive, and then to do this again in the closing argument really put him at a disadvantage. Considering that the evidence wasn't overwhelming, that this woman didn't consent, because there's a lot of evidence that she did consent and that it was voluntary, under these circumstances, it all did deprive him of a fair trial. Thank you. Thank you. May it please the Court? Counsel? Your Honors, good morning. My name is Amy Jennings. I was with Darius Redd, who was charged with sex trafficking by force, fraud, or coercion. He went to trial. The district court engaged in lengthy and thorough litigation pre-trial regarding the evidentiary issues in this case, which involved Rule 12, and made proper rulings that were directly in accordance with the controlling case law of this circuit, including the Roy case and the Elbert case. The evidentiary rulings by the district court, as well as its decision not to intervene in the cross-examination or the closing argument, provided defense counsel with a full and fair opportunity to present his defense. The claims that he was hamstrung in his defense through those evidentiary rulings and through the court's decision not to intervene in cross or closing are belied by the record, which show clearly that the defendant put forth before the jury his defense that she was a voluntary participant, she was an enthusiastic participant, and the jury made its own decision as far as whether it believed the defendant or if it believed A.E. in this case. What was the government's theory about the first night, I guess March 2nd and 3rd? I think it starts with that day. Is that part of the coercion in the government's theory? In the government's theory of the case, in the opening statement, in the direct examination, and in the closing, the government never called that a rape. The government started the indictment with that date because that's the beginning of their relationship, and when they began to communicate with each other, which the government believes is the overall forced fraud and coercion relationship. So the theory was maybe that there wasn't a rape that night, but there was coercion and fraud? Yes, Your Honor. So if that's the case, then why isn't at least some of that video relevant to counter the government's theory that the fraud and coercion started that night? Yes, Your Honor. Well, the district court excluded only the video. The district court did not exclude the statements made by A.E., and in her written ruling, she made that clear, which is in accordance with the Roy case, which was the exact same type of situation. We have a defendant who has a secret, or not a secret recording, but a recording of a consensual sex act at the beginning of a relationship, and he wants to use that to show that the entire rest of the relationship was consensual. But as I understand what you're saying is that it wasn't fully consensual, that it was coercive. That's what I'm trying to kind of understand what the government's characterization is of that first night, because if your position and everybody's position is truly that was consensual sex between two people, that's not relevant to the prostitution. That's one thing, but it's another thing for the government to come in and say, well, that initial sexual activity between the two of them is really the start of the crime, and that's part of the coercion and fraud. I understand your question. It's the government's theory that it was the start of the relationship, and that it was not a rape, and the government never characterized it as a rape. To interrupt you, if we can get some daylight between a relationship and rape, the statute says coercion and fraud. So I guess my direct question to you is, was it your theory that initial sexual activity between the two of them was part of his coercion and fraud over her to get her to eventually prostitute for him? Yes. So that's part of the case, and so why wouldn't being able to put on evidence that that wasn't coercive be relevant to his defense? Well, the district court ruled that he could put on evidence of that, and the district court did the 403 and the 412 analysis of that evidence, and Rule 412 has built into it the analysis of whether or not it is bringing a risk of infusing the jury deliberation with unfair prejudice, and the district court did that analysis and decided that, yes, her statements are admissible, so long as they come in underneath a hearsay exception or some type of evidentiary exception, because truly, they are out-of-court statements offered for the truth of the matter asserted. And by statements, you mean statements from the videos? Excuse me? And by statements, are you referring to statements made in the videos? Yes. And that was her ruling, but the defense doesn't get to just put on any evidence that it wants. It has to be admissible under the federal laws of evidence, and then it has to go through the 403 analysis and make it in under 412, and the district court, the parties all litigated that beforehand. I believe that the court provides significant deference to the district court's evaluation of that evidence, and in this case, made the proper ruling that was in accordance with this court's prior cases in allowing those statements by the victim, if she was enthusiastic about her planning, those all could come in, but that it was cumulative to go on and show them having sex, and that it directly brought to bear those concerns that we have with 412 and why we have 412, and so that the jury doesn't make a decision based on evidence that is unfairly prejudicial. So am I right that in your briefing, you said that all the parties agreed that that sex between the two of them was consensual? Was that your position in the briefing? I know that in the trial and in the brief, consensual, that it was not a rape. But consensual, but it was coerced? And I'm not trying to be cute. I'm just trying to get a nuance of your argument, and I'm trying to get a sense of the difference between what you're saying here today and what was in the briefing regarding the role of that sexual activity in the theory of your case. Our position has always been that the subsequent rapes that she testified about, and there's three of them in the record, that those were all clear rapes that she said that she did not want to engage in, and that the beginning on that night was a consensual sexual encounter, meaning that he did not force her physically to have sex with him, but that the idea of prostitution came up, and that he started using fraud and coercive tactics at that time. So that's the government's position. I don't believe it's changed from trial or at briefing. I think Judge Kelly's point is that it's not really consensual if it's coerced or the result of fraud in the first encounter. And I believe that that was explored with the witness on cross-examination, and that was completely available for cross-examination purposes to the defendant. Let me ask you, when you say the statements were capable of being used, was the defense attorney able to literally say, during that first encounter, you said X and such, right? In the court's ruling, it said that it was excluding the videotape, which was just the actual consensual sexual encounter between them, but that it was reserve ruling on the statements from the tape. And then he was given the opportunity during his offer of proof to identify to the court what had transpired in her testimony that would make any of those statements prior inconsistent statements. And he did not take that opportunity. He instead referred to the prior briefing that was done in that case and incorporated that and did not identify for the court any type of testimony that would have altered its previous evidentiary analysis. So given the government's theory of the case, it would seem to be improper to exclude evidence of the initial encounter. So I think maybe it comes down to whether it's within the discretion of the district court to admit the video being too prejudicial. Could you address that? Yes, Your Honor. And in this case, it was a proper exercise of the court's discretion. The court went through the 403 analysis. And again, I don't, you know, under 412, I'm not sure, the government is not conceding in any way that this was admissible under 412 or that it was relevant. But if we get to the point of Rule 403, the district court did do an analysis there and made the analysis that the defendant was allowed to present his defense fully and fairly without showing that particular video. And that was the right decision, as the court has already touched on. This was one sexual encounter that happened before the entire conduct of forced fraud or coercion, her engaging in any type of sex acts. He was not charged with a rape in this case for that night. He was charged with using forced fraud or coercion. And really, none of those sex acts had happened up until that point. So the district court properly excluded it, properly came to the conclusion that even if it did have some type of marginal probative value, under 403, it was properly excluded. Turning to the other issues regarding the evidentiary matters in this case, the government would just like to make clear that the defense that A.E. was a willing and voluntary participant was brought out through the evidence and through cross-examination, even though those videos were excluded. Particularly in the time frame right after that sexual encounter, there was text messaging between these two of these individuals. The jury saw that she sent approximately seven videos of that night. They saw the actual text messages between them. One of those videos, it's the screenshot at the beginning where you would press play, it's a picture of her smiling in the video with the defendant behind her, which the government believes would be part of their argument that she was a willing and enthusiastic participant. Additionally, those texts go through her asking the defendant questions about her wanting to make a pornographic video, which would also align with the defense's position in this case that she was a willing and enthusiastic participant. It goes through her giving advice about his clothing. He got her to admit on the stand that she wanted to do this and that she wanted to do it because of the money. That is something that she testified to on cross-examination at page 760. I wanted, the whole reason I wanted to eventually get involved, this is what the jury heard in this, was because I wanted the money, but then I did not end up getting the money. The defendant also testified that, repeatedly, that it was her idea and that she was the one who wanted to do that. Turning to the cross-examination and closing claims, the case law demonstrates that what the prosecutor did here was not forbidden. What's forbidden is asking a witness whether another witness has lied. That's because determinations of credibility are for the jury and not for witnesses. Isn't that really what was happening here? Eighty-five times did you hear? First of all, what's the potential relevance of what he heard in court? Your Honor, the courts have addressed this type of questioning before. They have pointed out that cross-examination of a defendant can be used to address the issue of tailoring, because the defendant is present in the courtroom throughout the entire trial. That's addressed in the Portuondo Supreme Court case, allowing comment upon the fact that a defendant's presence in the courtroom provides him a unique opportunity to tailor his testimony as appropriate. Indeed, but he wasn't tailoring his testimony to other witnesses. He was countering it, right? Well, it's not necessarily tailoring it to other witnesses, but tailoring it to his defense. And the prosecutor was allowed. All of the case law that is cited says that what's not permissible is asking a witness, did another witness lie? And there is nowhere in the record that the defendant can cite to that the prosecutor did that. It is permissible, the courts have said over and over, to review the evidence with the defendant so as to focus the jury on the difference between the government's witnesses' testimony and the information being given by the defendant. As to your tailoring part, was there a tailoring problem that the government saw, that they were concerned that he was kind of trying to maneuver his testimony in response? Was that at issue here? At issue was that the defendant wasn't telling the truth, and so the government wanted to be able to ask the defendant if he had heard other portions of testimony, and his answer would be yes or no, and then move on from there. But that was to highlight the differences, because the defendant had just given his version of events on his direct examination. And isn't the sub-cilential reason for highlighting it is to show that he's lying, or that he's accusing somebody else of lying? Well, credibility determinations are of course something that's at issue on cross-examination. Right, but it's awful close to that line of asking to comment on the other person lying. Maybe the question didn't get asked, but it got awfully close. He never asked that question, and the case law demonstrates that even questions that are close to that, such as was this person inaccurate, were they mistaken, even those types of questions have been upheld. So thank you, your honors, for the opportunity, and the government respectfully requests that this case be affirmed. Thank you, Ms. Jennings. Rebuttal. In terms of the video, the thing that I think is the clearest for why reversal is necessary is that he was not allowed at all to ask about the rough sex component, and that goes directly to the force. And Ms. Jennings talks about how there was discussion of him having raped her later, and that goes directly to whether or not that testimony is credible, or whether or not there was consent. And there's no question that that was something the district court excluded ahead of time, and it was never allowed to come in. It's not something that she was questioned about in other ways on cross-examination. So that's one area where it could change the calculus in the jury's mind, and he should be able to present that. I also think that under this court's case law in Johnson, reversal is necessary on the rebuttal closing argument issue. What happened in this case is no different from Johnson, and Johnson said that it's unfair to talk about you've got to be the bulwark for the community. And these statements are the same. There's no distinction between what happened there and what happened here. So it's not harmless beyond a reasonable doubt. This did affect his right to a fair trial. There was no objection to the closing, was there? That's correct. But still, the analysis is, did it impact his right to a fair trial? Well, isn't the analysis reasonable likelihood of affecting the outcome? Of affecting whether or not he had a fair trial, and yes, the outcome, too. But, well, actually, I should back that up. No, I do think it is about, the standard is... Had it been preserved, it might be, you know, miscarriage of justice type argument. But I'm not sure without objection. I still think with constitutional errors, that there needs to be, it needs to be shown that it didn't... Is that a constitutional error? If it impacts his right to a fair trial, it is, I think. Wow. Okay. That's kind of, that's circular, but okay. But in any event, I think what happened is no different. And so it is plain error. And yes, when we're talking about what was said here, it's not just saying he shouldn't be allowed to traffic people anymore. They're talking about he just shouldn't be able to harass women anymore. You shouldn't be able to go to Burger King and try to pick up a woman anymore. He just needs to be gone from this community because he's bad news. And that is very inflammatory to a jury and therefore reversal is required. Thank you. Thank you, counsel. We appreciate both counsel's arguments today and appearance. Case is submitted and we'll issue an opinion when we can.